640 A.2d 372

CRY, INC., Gary and Diana Steck, David L. and Carol Rupp, Raymond Rupp, Herman and Carol Lee Gardner, John and Eleanor Ondrejko, Antoinette Bazala, Tim Kautz, Carl and Joan Kodrin, Peter and Hattie E. Seaton, Anthony Sr. and Melbry Bolk, Appellees,

v.

MILL SERVICE, INC., Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 21, 1993.

Decided March 29, 1994.

Robert L. Byer, R. Timothy Weston, Richard W. Hosking, Thomas M. Reiter, Kirkpatrick & Lockhart, Pittsburgh, for appellant.

Robert P. Ging, Jr., Confluence, Terrence M. Ging, Confluence, for Cry, Inc.

Diana J. Stares, Asst. Counsel, Pittsburgh, Jody Rosenberg, Dennis W. Strain, Asst. Counsel, Dept. of Environmental Resources, Harrisburg, for amicus curiae.

Before LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The issues in this case are whether a citizen lawsuit under certain environmental statutes against an alleged polluter requires the joinder of the Department of Environmental Resources (DER) as an indispensable party, and secondly, whether the action should be heard in the Court of Common Pleas or in Commonwealth Court. For the reasons that follow, we hold that DER must be joined in this action as an indispensable party and that the action is within the original jurisdiction of Commonwealth Court.

On May 22, 1990, the Concerned Residents of Yukon, Inc. (CRY), and sixteen individuals (citizens) who reside in Yukon, an unincorporated village in Huntingdon Township, Westmoreland County, Pennsylvania brought an action against Mill Service, Inc. (Mill Service) in the Court of Common Pleas of Westmoreland County. The complaint alleges that plaintiffs have been and continue to be harmed by Mill Service's operation of its Yukon plant, which treats and stores hazardous waste from steel making and other industries. Plaintiffs alleged that they were authorized to bring their suits pursuant to the Air Pollution Control Act, the Clean Streams Law, and the Hazardous Sites Cleanup Act.[1]

On May 30, 1990, Mill Service removed the suit to the United States District Court for the Western District of Pennsylvania. On or about June 1, 1990, CRY et al. filed an amended complaint and moved to remand the action to the Court of Common Pleas of Westmoreland County. On July 23, 1990 the federal court remanded this action to the Court of Common Pleas of Westmoreland County. Mill Service filed

---

1. *See* The Hazardous Sites Cleanup Act, 35 P.S. section 6020.1115(b); The Clean Streams Law, 35 P.S. section 691.601(c); The Air Pollution Control Act, 35 P.S. section 4010(f), recodified at 35 P.S. section 4013.6.

preliminary objections on or about August 29, 1990, which were addressed by an opinion and order dated September 10, 1991 of the Court of Common Pleas of Westmoreland County. In this opinion and order, the court required CRY et al. to file an amended complaint joining DER as an indispensable party plaintiff. The Second Amended Complaint, filed September 30, 1991, names DER as an involuntary plaintiff. The second amended complaint consists of fourteen counts, including Count I, "Violation of the Hazardous Sites Clean–Up Act," which alleges, inter alia:

61. At all times material hereto, commencing in or before 1980 and continuing to the present, Mill Service has without the benefit of permit or otherwise discharged hazardous wastes to the surface and groundwaters of the Commonwealth, and continues to do so.

62. The hazardous substances released by Mill Service into the environment have had a negative health impact on residents of Yukon and members of the Corporate Plaintiff and individual Plaintiffs, and have caused them serious and substantial bodily injury and personal harm, as well as having seriously and substantially degraded the natural resources upon which they rely, including, inter alia, land, air and water.

63. Members of the Corporate Plaintiff have attempted to pursue the normal administrative rights available to them, by taking appeals to the Environmental Hearing Board from those activities which constitute appealable activities, and otherwise attempting to involve themselves in the process involving the ongoing releases at the Mill Service site, however, these methods of administrative and judicial review have failed to provide any relief or meaningful review to the Plaintiffs, in that Mill Service continues to discharge hazardous waste into the waters of the Commonwealth, and the ambient air.

64. The Department of Environmental Resources has allowed Mill Service to adversely effect [sic] the public health, safety and welfare and the natural resources of the Commonwealth both on a short term and long term basis,

by approving and condoning the discharge of hazardous waste into surface and groundwaters of the Commonwealth, and into the air.

\* \* \* \* \* \*

71. The Plaintiffs and members of the Corporate Plaintiff are individuals who have experienced and are threatened with personal injury and property damage as a result of the release of hazardous substances by Mill Service, Inc. into the surface, groundwaters, and air of the Commonwealth of Pennsylvania. Plaintiffs and members of the Corporate Plaintiff have suffered severe and substantial impairments to their health, property damage, damage to their livestock and pets, and have otherwise been injured as a result of the actions of Mill Service, Inc. in violation of this Act.

72. The Commonwealth of Pennsylvania has failed to halt, cease, or abate the nuisances set forth herein, and accordingly notice of this lawsuit have [sic] been previously and timely served upon the Attorney General, the Commonwealth of Pennsylvania, and Mill Service, Inc.

The relief which CRY and individuals seek in this count and in each count of the complaint includes:

a. Enjoining preliminarily and after final hearing Mill Service from disposal or treatment of hazardous wastes at its Yukon facility.

\* \* \* \* \* \*

d. Requiring the Commonwealth of Pennsylvania, upon intervention to forebear [sic] in the issuance of any further permits to Mill Service, Inc. including but not limited to permits which would cure violations alleged in this lawsuit, solely for the purposes of affecting [sic] that cure.

e. Appointing a trustee of natural resources for the Mill Service site, until such time as a full and final determination of the effects on the health, safety and welfare of the members of the Yukon community have been decided and determined or requiring the Department to strictly enforce the environmental laws of the Commonwealth.

\* \* \* \* \* \*

h. Appointing a receiver to marshal the assets of Mill Service, Inc., and to assure that said assets are not dissipated in anticipation of the outcome of this litigation, and to conduct the day to day business of Mill Service without further degradation of the environment.

i. Requiring Mill Service to immediately cease discharge of hazardous waste leachate to the groundwaters of the Commonwealth to the surface waters, and into the air.

Amended Complaint (Second) filed by CRY et al. on September 30, 1991.

In ruling on preliminary objections, the trial court held that DER was an indispensable party because some of the relief sought necessarily involves DER. Moreover, without DER, there could be a duplication of the requirement to defend and, more importantly, a confusing and incomplete disposition which would prejudice the defendant. Further, the trial court determined that the action would lie in the court of common pleas because except for the Solid Waste Management Act, the other environmental statutes invoked specifically indicate jurisdiction in the court of common pleas.[2]

Commonwealth Court reversed, holding that DER is not an indispensable party and that the action lies in the court of common pleas, 153 Pa.Cmwlth. 13, 619 A.2d 807. According to Commonwealth Court, the test of whether a party is indispensable is "that an indispensable party's rights must be so closely connected to those of the litigants that an order or decree cannot be made without impairing those rights," citing *Pennsylvania Dental Association v. Commonwealth, Insurance Department*, 126 Pa.Cmwlth. 628, 635, 560 A.2d 870, 873 (1989). The court added:

a Commonwealth agency should not be declared an indispensable party unless meaningful relief cannot conceivably be afforded without the sovereign itself becoming involved. *Pennsylvania State Education Association [v. Common-*

2. *See* note 1 supra.

*wealth,*] 101 Pa. Commonwealth Ct. [497,] 501, 516 A.2d [1308,] 1310 [ (1986) ].

Slip Op. *Id.*

The initial question which arises in this case is the proper test for determining the indispensability of a party.

In *Scherbick v. Community College of Allegheny County,* 479 Pa. 216, 220, 387 A.2d 1301, 1303 (1978), this court stated:

In Pennsylvania, an indispensable party is one whose rights are so directly connected with and affected by litigation that he must be a party of record to protect such rights, and his absence renders any order or decree of court null and void for want of jurisdiction.

*Id.,* citing *Columbia Gas, Etc. v. Diamond Fuel Co.,* 464 Pa. 377, 346 A.2d 788 (1975). (Emphasis omitted.)

In *Action Coalition v. Allegheny County Institution District,* 493 Pa. 302, 311, 426 A.2d 560, 564 (1981), this writer, in a plurality opinion, described the traditional indispensable party rule as requiring that "a court should not adjudicate a case if an absentee was so closely related to the matters in dispute that further litigation would probably be required to define the position of the absentee or to protect the defendant." It was suggested that the best way to determine whether an absentee is so closely related is to balance the interests of the plaintiff, the defendant, the absentee and society's interest in the orderly and efficient administration of justice.

Five months after *Action Coalition,* this court decided *Mechanicsburg Area School District v. Kline,* 494 Pa. 476, 431 A.2d 953 (1981), holding that an indispensable party consideration involves "at least" the following:

1. Do absent parties have a right or interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Id.* at 481, 431 A.2d at 956.

It is apparent that the basic inquiry in determining whether a party is indispensable concerns whether justice can be done in the absence of a third party, and further, that this issue can be formulated in several different ways. Since this court's latest formulation appears in *Mechanicsburg,* that formulation defines the appropriate analysis.[3] In order to make the analysis, however, one must refer to the nature of the claim and the relief sought.

Both in the complaint, set out above, and in its brief, CRY et al. allege that DER has engaged in misfeasance and malfeasance. Moreover, even DER acknowledges that there are at least two demands for relief in which it would be involved: the demand that DER forbear from issuing further permits and that a natural resources trustee be appointed. Mill Service points out that in addition, the demand of CRY et al. that leachate immediately cease contradicts an existing DER Closure and Post–Closure Plan Approval Order which allows a more gradual cessation of leachate, which is to be accomplished by a complete capping of one of Mill Service's impoundments. Immediate cessation, contrary to the closure and post-closure plan approval order, would require removing the cap and digging up of the waste materials for transfer to another location.

Applying the *Mechanicsburg* criteria, the first question is whether the absent parties have a right or interest related to the claim. The answer is in the affirmative. DER is the agency of government responsible for regulating harmful pollution of the kind alleged in this lawsuit. Second, we must inquire as to the nature of that right or interest. DER's regulatory activity and authority may be affected by an adju-

3. Mill Service contends that Commonwealth Court's refusal to follow a plurality opinion of this court amounts to "judicial insurrection." The claim is frivolous. It is axiomatic that a plurality opinion of this court is without precedential authority, which means that no lower court is bound by its reasoning.

dication of this lawsuit. Third, we must ask whether DER's interest is essential to the merits of the issue. Because DER's regulatory activity may be affected by any order entered in this case, and because compliance with that order may require the cooperation of DER, its interest is essential. Finally there is the question of whether justice can be afforded in the absence of DER. If DER were not party to this suit, it may withhold permits necessary to carry out remedies which may be ordered or it may seek to commence a multiplicity of actions in which the same or related matters are at issue. We regard this as more than speculation, given DER's insistence in its brief that a court is powerless to order certain of the relief sought and any adjudication of this case will not affect its rights.[4] In this posture, it seems likely that DER would not cooperate in the carrying out of any judicial remedy which it might perceive as usurping its authority. Such non-cooperation would require further litigation. We conclude, therefore, that DER is an indispensable party.

■ The next issue is whether it was error for the trial court to order DER's joinder as an involuntary plaintiff.

4. DER argues:

A court could never appoint someone who would supersede the department in carrying out the duties and obligations imposed by the General Assembly under the various environmental statutes.... [S]uch an action by the judiciary would constitute an unconstitutional commingling of powers....

What the citizens fundamentally want is to have Mill Service remediate any contamination at the site to more stringent levels, to have Mill Service cease operation of the Yukon Facility, and to have Mill Service compensate the residents for personal injuries and property damages. In order for a court to grant this relief it simply is not necessary for the Department to be a party to the lawsuit *nor can any rights of the Department be affected by the outcome of this litigation.*

DER Brief at 15. (Emphasis added.) It seems clear that DER would resist any judicial determination which it regarded as superseding its powers. This resistance might well involve additional litigation concerning the same matters which are the subject of this suit. As *Mill Service* states:

The absence of DER (which cannot be bound by any court's decision if it is not a party) exposes Mill Service to multiple and potentially inconsistent adjudications over its obligations and its rights under a network of environmental statutes and regulations.

Mill Service Brief at 29–30.

The essence of the complaint with respect to DER is that DER has failed to regulate Mill Service as it is statutorily required to do, and that it is guilty of malfeasance and misfeasance. The relief it seeks is directed not only at Mill Service, but also at DER. Rule 2227, concerning compulsory joinder, provides:

> (a) Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants.

Pa.R.C.P. 2227. While it is true that the interests of CRY et al. might be conceptualized as being aligned with DER's interests in regulating Mill Service, the more compelling analysis is that CRY et al. primarily seek relief *against* DER. DER, therefore, should be joined as an indispensable party defendant.

The next question is whether jurisdiction over this case rests with the Court of Common Pleas or Commonwealth Court. The trial court noted that the various environmental statutes relied upon by CRY et al. place jurisdiction to hear citizen suits in the court of common pleas. *See* The Hazardous Sites Cleanup Act, 35 P.S. section 6020.1115(b); The Clean Streams Law, 35 P.S. section 691.601(c); The Air Pollution Control Act, 35 P.S. section 4010(f), recodified at 35 P.S. section 4013.6. One must also consider, however, the statutory authority of Commonwealth Court to assume original jurisdiction of certain cases.

Section 761 of the Judicial Code provides:

(a) The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

> (i) actions or proceedings in the nature of applications for a writ of habeas corpus or postconviction relief not ancillary to proceedings within the appellate jurisdiction of the court;

> (ii) eminent domain proceedings;

> (iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units);

(iv) actions or proceedings conducted pursuant to the act of May 20, 1937 (P.L. 728, No. 193) referred to as the Board of Claims Act; and

(v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

(2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings.

(3) Arising under Article V of the act of May 17, 1921 (P.L. 789, No. 285), known as "The Insurance Department Act of 1921."

(4) Original jurisdiction of which is vested in the Commonwealth Court by any statute hereafter enacted.

As amended Dec. 20, 1982, P.L. 1409, No. 326, art. II, 201, 42 Pa.C.S. 761.

Since this is an action against the Commonwealth government which does not fall into any of the exceptions enumerated in Section 761(a)(1), original jurisdiction, under this section, rests in Commonwealth Court.

We are presented with a conflict between the various environmental statutes and the Appellate Court Jurisdiction Act when the statutes are applied to the facts of this case. The various environmental statutes place jurisdiction for citizen suits in the courts of common pleas, and the Appellate Court Jurisdiction Act places jurisdiction for suits such as these in Commonwealth Court.

The Statutory Construction Act provides that the General Assembly "intends to favor the public interest as against any private interest." 1 Pa.C.S. section 1922. We turn, then, to a reexamination of the question of indispensable parties to consider whether there is some aspect of that type of joinder of parties which leads us to conclude that the public interest is better served if jurisdiction is vested in one forum rather than the other.

In *Mechanicsburg* we were concerned, inter alia, with defining the indispensability of a party by considering the nature of the connection to the litigation which an indispensable party must have. That concern is properly rephrased as a balancing of the interests of the plaintiff, the defendant, the absent party, and the efficient administration of justice. In this case, the interests of CRY, Mill Service, DER, and of the public, in important part, are related to the manner in which this case affects other similar cases, including other cases arising from this litigation and involving these parties.

In *Action Coalition* it was suggested that a purpose of Commonwealth Court is:

... [T]o provide a judicial forum for the uniform and consistent resolution of questions of statewide importance. For example, the Department of Environmental Resources must have a clear idea of what its powers and duties are and would be severely handicapped if those powers and duties varied from county to county.

Thus, the legislature of this Commonwealth has clearly recognized the interest of the state in having an expert, specialized tribunal, Commonwealth Court, articulate uniform statewide standards in cases affecting the sovereign ... [I]f the Court of Common Pleas decides this question, Commonwealth Court will act only as an appellate court. But appellate scope of review is limited as to factual matters and inferences from fact, many of which are involved in this case. We question whether Commonwealth Court, acting only as an appellate court in cases such as this one, will be able to effectively articulate statewide standards as required by the legislature.

*Action Coalition* 493 Pa. at 315–16, 426 A.2d at 567, citing *T & R. Painting v. Philadelphia Housing Authority,* 466 Pa. 493, 498, 353 A.2d 800, 802 (1976) (Footnotes omitted.)

In the present case we conclude that the public interest requires that jurisdiction of this case must rest in Commonwealth Court. Not only is Commonwealth Court a specialized forum intended to deal with cases involving Commonwealth

agencies, but also, Commonwealth Court will be able to establish uniform statewide standards affecting DER in a manner hardly possible if it reviews the case on appeal only, and initial adjudication by Commonwealth Court will avoid a multiplicity of suits emanating from different counties.

For the foregoing reasons, we conclude that DER is an indispensable party defendant and that the case must be heard in Commonwealth Court.

Order of Commonwealth Court is reversed and the case is remanded to that court.

NIX, C.J., did not participate in the consideration or decision of this matter.

LARSEN, J., did not participate in the decision of this matter.

MONTEMURO, J., who was an appointed Justice of the court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.