The COUNTY OF ELK, and June H. Sorg, Christine Gavazzi and Joseph Koch, Commissioners, Appellants,

v.

HIGHLAND TOWNSHIP.

The COUNTY OF ELK, and June H. Sorg, Christine Gavazzi and Joseph Koch, Commissioners, Appellants,

v.

SPRING CREEK TOWNSHIP.

The COUNTY OF ELK, and June H. Sorg, Christine Gavazzi and Joseph Koch, Commissioners, Appellants,

v.

JONES TOWNSHIP.

The COUNTY OF ELK, and June H. Sorg, Christine Gavazzi and Joseph Koch, Commissioners, Appellants,

v.

MILLSTONE TOWNSHIP.

The COUNTY OF ELK, and June H. Sorg, Christine Gavazzi and Joseph Koch, Commissioners, Appellants,

v.

RIDGWAY SCHOOL DISTRICT.

The COUNTY OF ELK, and June H. Sorg, Christine Gavazzi and Joseph Koch, Commissioners, Appellants,

v.

JOHNSONBURG SCHOOL DISTRICT.

The COUNTY OF ELK, and June H. Sorg, Christine Gavazzi and Joseph Koch, Commissioners, Appellants,

v.

RIDGWAY TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued May 13, 1996.
Decided June 10, 1996.

Bradley J. Kraus, for Appellants.

David Pontzer, for Appellees, Highland Township et al.

Before McGINLEY, PELLEGRINI, JJ., and NARICK, Senior Judge

PELLEGRINI, Judge.

The County of Elk, June H. Sorg, Christine Gavazzi and Joseph Koch, Commissioners, appeal the orders of the Court of Common Pleas of the Fifty–Ninth Judicial District, Elk County Branch (trial court), denying their preliminary objections to complaints filed against it by Highland Township, Spring Creek Township, Jones Township, Millstone Township, Ridgway Township, Johnsonburg Area School District, and Ridgway School District (collectively, Townships). This appeal presents the legal issue of whether the Commonwealth of Pennsylvania, Department of Environmental Protection (DEP) is an indispensable party to an action against a county for its distribution of national forest grants due to DEP's responsibilities under the Single Audit Act of 1984, 31 U.S.C. §§ 7501–7507. The Single Audit Act was enacted for the purposes of setting uniform requirements for audits, to improve financial management of state and local government use of federal financial assistance, and to promote efficient and effective uses of the federal financial assistance.[1] "Financial assistance" includes any grants, contracts, loans, loan guarantees, property, cooperative agreements, interest subsidies, insurance or direct appropriations provided by a federal agency, 31 U.S.C. § 7501, and any state or local government which receives at least $100,000 in federal financial assistance during a fiscal year is required to have an audit made in accordance with the requirements of Section 7502(a)(1)(A) of the Single Audit Act.[2]

Since 1908, the federal government has distributed as grants part of the income received from each national forest. 16 U.S.C. § 500.[3] The grants are disbursed each year to states with national forest land within their boundaries for the benefit of public schools and public roads in the area of the national forest. Currently, the Department of Agriculture administers the national forest grants to the states.

Upon receiving the national forest grant, the Commonwealth, through DEP, divides the grant between the affected counties in the proportion of the number of acres of national forest within the county to the number of acres of national forest within the state. Section 1 of the Act of April 27, 1925, P.L. 324, *as amended*, 72 P.S. § 3541.[4] Each school district and township receives its

---

1. *See* Section 1(b) of the Act of October 19, 1984, P.L. 98–502, 98 Stat. 2327.

2. Section 7502(a)(1)(A) of the Single Audit Act provides:

   Each State and local government which receives a *total amount* of Federal financial assistance equal to or in excess of $100,000 in any fiscal year of such government shall have an audit made for such fiscal year in accordance with the requirements of this chapter and the requirements of the regulations prescribed pursuant to section 7505 of this title. 31 U.S.C. § 7502(a)(1)(A).

3. The federal statute creating the grants provides, in pertinent part:

   On and after May 23, 1908, twenty-five per centum of all moneys received during any fiscal year from each national forest shall be paid, at the end of such year, by the Secretary of the Treasury to the State in which such national forest is situated, to be expended as the State legislature may prescribe for the benefit of public schools and public roads of the county or counties in which such national forest is situated: Provided, that when any national forest is in more than one State or county the distributive share to each from the proceeds of such forest shall be proportional to its area therein.

   The federal government receives income from national forests for timber, from permits for hunting, fishing or camping, or for other uses of the land in national forests. 16 U.S.C. § 499.

4. The disbursement of the national forest grants is governed by 72 P.S. § 3541 as follows:

   All moneys heretofore or hereafter paid to the Commonwealth by the Secretary of the Treasury of the United States under the provisions of the aforesaid act shall be paid by warrant of the Auditor General on the State Treasurer to the treasurers of the several counties in which the forest reserve is situated, in the proportion that the area of said reserve in the respective counties bears to the area of the reserve within the Commonwealth.

share from the county in the proportion of the amount of national forest land in each to the total area of national forest land in the county.[5]

The Allegheny National Forest is located partially in the County of Elk making it eligible for national forest grants. Each year since 1991, the County of Elk has retained a two-percent administration fee for, it asserts, its costs to distribute the national forest grants to its townships and school districts. The Townships, who all receive a share of the national forest grant, each filed a complaint against the County of Elk and the elected commissioners of the County (collectively, the County) challenging the County's retention of the two-percent administrative fee and its division of the grant.

The County filed preliminary objections arguing that because the Townships failed to join DEP, which it maintained was an indispensable party, the actions should be dismissed. The County argued that DEP had approved the prior audit reports with a two-percent administrative fee, and that DEP could allow an audit exception for the administrative fee. It also argued that DEP had the power to enforce the audit requirements. The County's preliminary objections also argued, in reliance on the first objection, that the trial court lacked subject-matter jurisdiction because jurisdiction over DEP would be in the Commonwealth Court and that the Townships failed to exhaust their administrative remedies before DEP.

As to whether DEP is an indispensable party, the trial court held that under the Single Audit Act, DEP is simply required to review the audit and notify the Department of Agriculture if there are any irregularities.

Because it lacks regulatory or enforcement powers under the Single Audit Act, the trial court held that DEP has no right or interest affected by the action and is not an indispensable party. Therefore, the trial court denied all of the County's preliminary objections. On the County's motion for reconsideration, the trial court denied the motion but certified the issue for appeal to this court.[6]

The County contends that audits analyzing its distribution of the national forest grants, including the retention of an administrative fee, must be approved and accepted by DEP pursuant to the Single Audit Act. This approval requirement, the County argues, is a regulatory power that would be encroached by this action unless DEP is joined, making it an indispensable party. Admitting that the Single Audit Act requires the performance of an audit by the County, they argue that the terms of the Act do not confer any regulatory or approval power on DEP, so that it is not indispensable.

The basic inquiry in determining whether DEP is indispensable concerns whether justice can be done in its absence. *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 469, 640 A.2d 372, 375 (1994). Whether a party is indispensable involves at least the following considerations:

1. Do absent parties have a right or interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

---

5. The counties' responsibilities are set forth in Section 2 of the Act of April 27, 1925, 72 P.S. § 3542, which states:

> [U]pon the receipt of such moneys by the county treasurer, three-fourths thereof shall be set apart for the benefit of the public schools and the remaining one-fourth thereof for the benefit of the public roads of the townships of the county in which any part of said reserve is situated; and the moneys shall be paid by warrant of the county commissioners to the treasurers of the several school districts and townships in which the forest reserve is situated, in the proportion that the area of said reserve in the respective school districts or

townships bears to the area of the reserve within the county.

An alternative distribution method, which must be adopted by a majority vote in the township, is set forth in Section 3 of the Act of April 27, 1925, 72 P.S. § 3543, and allows the township to receive a one-half share of the national forest grant rather than a one-fourth share, but with the proviso that the one-fourth increase must be spent for highway projects that benefit the public schools.

6. 42 Pa.C.S. § 702(b). This court granted permission to appeal on March 22, 1996.

4. Can justice be afforded without violating the due process rights of absent parties?

*Centolanza v. Lehigh Valley Dairies, Inc.,* 540 Pa. 398, 403, 658 A.2d 336, 338–39 (1995), citing *CRY,* 536 Pa. at 468–69, 640 A.2d at 375.[7]

In *Centolanza,* a private cause of action was brought to collect costs for cleanup and diminution in property value under the Storage Tank and Spill Prevention Act.[8] The dairy argued that the Pennsylvania Department of Environmental Resources was an indispensable party. The Supreme Court held that although the Department of Environmental Resources did have a right or interest in the claim because it is the agency responsible for regulating harmful pollution of the kind alleged in the matter, and that its regulatory authority may be affected by the adjudication, its interest was not essential to the merits of the issue. *Centolanza,* 540 Pa. at 404, 658 A.2d at 339. The Commonwealth's interest was not essential, the Supreme Court stated, because the claim did not allege that the Commonwealth failed to perform any regulatory activity or request any type of relief involving the Commonwealth. *Id.*

In *CRY,* a group of citizens filed suit against an industrial waste treatment and storage facility and alleged violations of various state environmental laws. The complainant's allegations were that the Department of Environmental Resources engaged in misfeasance and malfeasance, and the relief requested included that the Department forbear from issuing further permits to Mill Service, and that a trustee for the natural resources be appointed for the site. *CRY,* 536 Pa. at 469, 640 A.2d at 376. As in *Centolanza,* the Supreme Court held in *CRY* that the Department of Environmental Resources had a right or interest related to the claim because of its regulatory power over the subject of the suit, and that its regulatory activity may be affected by the lawsuit. However, unlike in *Centolanza,* the Supreme

Court held that the Department of Environmental Resources' interest is essential to the merits because compliance with order in the case would require the cooperation of the Department which it was unlikely to give. Because the Department was seen as unlikely to cooperate in any order in which it was not bound, it was held to be an indispensable party. *CRY,* 536 Pa. at 470, 640 A.2d at 376.

█ Applying the four considerations for an indispensable party to this case, we must determine whether DEP's role in the Single Audit Act creates a regulatory interest of the nature that would be affected by the action and is essential to the merits.

The provisions of the Single Audit Act establish the independent auditor, an external auditor or public accountant who meets the generally accepted standards of independence,[9] as the party responsible for determining whether the County meets the legislative requirements for receiving and expending the national forest grants. Such provisions in Section 7502 state, in pertinent part:

(c) Each audit conducted pursuant to subsection (a) shall be conducted by an independent auditor in accordance with generally accepted government auditing standards, . . .

(d)(2) Each such audit shall encompass the entirety of the financial operations of such government or of such department, agency, or establishment, whichever is applicable, and shall determine and report whether—

(A)(i) the financial statements of the government, department, agency, or establishment present fairly its financial position and the results of its financial operations in accordance with generally accepted accounting principles . . .

(B) the government, department, agency or establishment has internal control systems to provide reasonable assurance that it is managing Federal financial as-

---

7. Absence of an indispensable party goes to a court's jurisdiction and prevents it from granting relief. *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184 (1988).

8. Act of July 6, 1989, P.L. 169, *as amended,* 35 P.S. §§ 6021.101–.2104.

9. Section 7501 of the Single Audit Act, 31 U.S.C. § 7501.

sistance programs in compliance with applicable laws and regulations; and

(C) the government, department, agency or establishment has complied with laws and regulations that may have a material effect upon each major Federal assistance program.

31 U.S.C. § 7502.

If the independent auditor determines that there has been any instance of noncompliance, he or she is required to report that determination first to the recipient or subrecipient. 31 U.S.C. § 7502(d)(3). The noncompliance must be explained in the auditor's report. Section 13 of the Office of Management and Budget's (OMB) Circular No. A–128, dated April 12, 1985 (Reproduced Record 93). The independent auditor is also responsible for including a plan for corrective action for noncompliance with laws or regulations and for reporting the status of corrective action or, if none is taken or planned, why such corrective action is unnecessary. *Id.* The plan for corrective action or a statement of why corrective action is unnecessary

is sent to the DEP,[10] who is then required to ensure that the planned action is taken.[11]

If no material noncompliance is found, the auditor's report is channeled through DEP to the federal Department of Agriculture.[12] As federal agency making the grants, it is the "cognizant agency"[13] and is required to "ensure that audits are made in a timely manner and in accordance with the requirements of this chapter". 31 U.S.C. § 7504. It has the duty to monitor and resolve all action on the report. Section 14 of the OMB's Circular No. A–128 (R.R. 94). Sanctions for failure to comply with audit requirements, including complying with applicable statutes or regulations, are set forth in Section 17 of the OMB's Circular No. A–128 (R.R. 94–95), including withholding or suspending federal financial assistance.[14]

Because the plain language of the Single Audit Act establishes that the independent auditor, not DEP, makes findings as to all aspects of the County's use of the national forest grants, including whether it has complied with 16 U.S.C. § 500 and the Single

---

**10.** The general requirement for corrective plan is discussed in Section 7502(g) of the Single Audit Act:

> If an audit conducted pursuant to this section finds any material noncompliance with applicable laws and regulations by, or material weakness in the internal controls of, the State or local government with respect to the matters described in subsection (d)(2), the State or local government shall submit to appropriate Federal officials a plan for corrective action to eliminate such material noncompliance or weakness or a statement describing the reasons that corrective action is not necessary....

31 U.S.C. § 7502(g).

**11.** Section 7502 of the Single Audit Act states:

> (e)(1) Each State and local government subject to the audit requirements of this chapter, which receives Federal financial assistance and provides $25,000 or more of such assistance in any fiscal year to a subrecipient, shall—
> (A) if the subrecipient conducts an audit in accordance with the requirements of this chapter, review such audit and ensure that prompt and appropriate corrective action is taken on instances of material noncompliance with applicable laws and regulations with respect to Federal financial assistance provided to the subrecipient by the State or local government; ...

31 U.S.C. § 7502. That part of the statute addressing review of subrecipients which do not conduct an audit, 31 U.S.C. § 7502(e)(1)(B), is inapplicable because the County admits it is required to perform an audit pursuant to the Single Audit Act. Therefore, we do not address whether DEP would have regulatory powers that would be affected by an action similar to this one if those parts of the act were applicable.

**12.** The timely transmittal of the report to the federal cognizant agency is required in Section 7502(f) of the Single Audit Act:

> The report made on any audit conducted pursuant to this section shall, within thirty days after completion of such report, be transmitted to the appropriate Federal officials and made available by the State or local government for public inspection.

31 U.S.C. § 7502(f).

**13.** A "cognizant agency" is defined as a federal agency which implements the auditing requirements with respect to a particular state or local government. 31 U.S.C. § 7501.

**14.** Although neither the Single Audit Act nor OMB's Circular No. A–128 provides a review procedure to the state or local government or agency, actions have been brought raising audit issues under the statutes granting the federal financial assistance or through administrative procedures provided in those statutes. *See, e.g., Faras v. Hodel,* 845 F.2d 202 (9th Cir.1988).

Audit Act, and that the ultimate authority is with the cognizant federal agency, DEP's role is ministerial in nature. As outlined above, it merely collects all the audits done by the counties to which it distributes federal financial assistance and transmits the independent auditor's report and any corrective plan to the cognizant federal agency. Contrary to the federal agency's oversight powers, DEP is not required to made a substantive evaluation of the independent auditor's findings. Therefore, unlike in *Centolanza* and in *CRY*, DEP has no regulatory power over the subject of the action against the County.

Moreover, even if we assumed that DEP had a right or interest in the Townships' claims that would be affected by the action, DEP's interest would not be essential to the merits of the issue. As in *Centolanza*, the Townships' complaints do not allege any malfeasance or misfeasance on the part of DEP. Also, because the prayer for relief requests only damages from the County and a declaration that the County cannot claim an administrative fee from the national forest grants, (*see, e.g.,* R.R. 11–25), DEP's cooperation would not be required to grant relief and later enforcement is the responsibility of the independent auditor who is charged with knowing the applicable law and the Department of Agriculture.

Accordingly, DEP is not an indispensable party and the trial court's denial of the County's preliminary objections is affirmed.

### ORDER

AND NOW, this 10th day of June, 1996, the orders of the Court of Common Pleas of the Fifty–Ninth Judicial District of Pennsylvania (Elk County Branch), Nos. 94–575, 94–731, 95–3, 95–71, 95–208, 95–630, and 95–631, each dated January 29, 1996, are affirmed.