## Medallis v. Northeast Land Development

*Brian Glass* and *Carlene Gallo,* for plaintiffs.
*Joel M. Wolff,* for defendants Northeast Land Development LLC, CJS Dev. Inc. and Tripp CDC Inc.
*Carl J. Poveromo,* for defendant CIDC-1 LLC.
*Gerald J. Butler,* for defendant City of Scranton.

MINORA, *J.,* June 26, 2009—

## I. INTRODUCTION

Currently before the court are the collective motions for post-trial relief filed by the defendant, Northeast Land Development LLC, CJS Dev. Inc., Tripp CDC Inc. (collectively the Northeast defendants), CIDC-1 LLC and the City of Scranton.

We will dispose of said collective motions for post-trial relief in this consolidated memorandum and order.

By way of background, this action stems from the plaintiffs' claim that they are the owners of real property located at 1215 Philo Street, Scranton, Pennsylvania. According to their second amended complaint, the plaintiffs never experienced any flooding problems on their property prior to the construction of the Village of Tripp Park. However, plaintiffs contend that since the construction of the development began in or around 2001, high volumes of water, eroded material and debris have flowed toward and entered upon their property during rainstorm events. This continuous runoff problem has caused great distress as well as damage to the plaintiffs and allegedly constitutes a continuous trespass. Plaintiffs allege that the collective defendants have directly or indirectly altered the natural flow of surface waters in the course of construction activities by concentrating water through inadequate artificial channels thus causing discharge upon their property. Accordingly, plaintiffs sought to recover monetary damages, as well as injunctive relief, forcing defendants to correct the situation. Plaintiffs eventually withdrew their claim for damages.

The matter painstakingly progressed through the pre-trial stages as other potential defendants were dismissed

from the case. Specifically, the Scranton Redevelopment Authority is no longer a party to this action as per court order of discontinuance dated September 11, 2007.

Belated joinder attempts to bring in additional defendants Inter-Co Construction Managers Inc., Acker Associates Inc. and Digg-It Corporation were disallowed per the undersigned granting preliminary objections on the record just prior to the commencement of a non-jury trial against the remaining and above-captioned defendants.

After a two-day non-jury trial on April 28 and April 29, 2008, the court issued a non-jury decision on December 4, 2008 as per Pa.R.C.P. 1038 which included the following non-jury verdict and injunctive relief.

"(1)(a) The developer defendants, Northeast Land Development LLC, CJS Development Inc., Tripp CDC Inc. and CIDC-1 LLC, their principals, shareholders, agents, employees, heirs, executors administrators successors and/or assigns are individually and collectively enjoined from any further development of the 'Village of Tripp Park' until the storm water issues subject to this lawsuit are addressed, abated and corrected so as to cause water to remain in their designated channels and not run off onto the land of private land owners such as plaintiffs.

"(b) In addition, the above broadly defined developer defendants at 1(a) will, at their own expense, develop and implement a proposed solution subject to review and comment by the plaintiffs' experts, Cahill Associates as well as any independent expert the court may deem necessary.

"(c) Any storm water solution must be verified and approved by all applicable governmental bodies.

"(d) The storm water solution shall be implemented immediately and with urgency and the parties shall inform the court of the progress of such solution within 90 days of this verdict.

"(e) The City of Scranton quite logically is enjoined from issuing any further subdivision and/or lot development permits of any nature for the continued development of the Village at Tripp Park by any person or entity until the storm water issues are addressed, abated corrected and the corrective systems' effectiveness is verified.

"(f) The defendants will bear their own legal costs and additionally those of the plaintiff and the developer defendants shall exclusively bear the full costs of the court imposed 'storm water solution.'"

The defendants all timely filed their motions for post-trial relief which we will subsequently detail below. Those motions have all been adequately briefed as well.

In the meantime, the parties reached a stipulation which modified section IV, 1(e) of the court's non-jury decision of December 4, 2008. This stipulation became effective when the court approved the stipulation and order on May 22, 2009.

In essence, the stipulation and order of May 22, 2009 allowed existing third party lot owners in the Village of Tripp Park to seek permits from the City of Scranton to conduct maintenance, replacement and/or repairs to their

properties as well as defining a framework for improving their properties in a manner consistent with not producing additional storm water runoff. The details of that stipulation and order of May 22, 2009 are incorporated herein by reference.

In addition, said stipulation and order of May 22, 2009 does not in any way prejudice the parties in presenting their current post-trial motions which we will now address. We note that only the issues briefed by the defendants will be considered on their merits. Any other issues raised in a motion for post-trial relief but not briefed are deemed waived. *Moore v. City of Philadelphia,* 131 Pa. Commw. 586, 596, 571 A.2d 518, 522-23 (1990).

## II. THE POST-TRIAL MOTIONS OF DEFENDANT CIDC-1 LLC

### A. *CIDC-1 Claims the Trial Court Erred in Finding CIDC-1 Liable for Surface Water Damage to Plaintiffs' Property*

This contention is without merit. The law in Pennsylvania is clear that a landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition. A landowner who does so divert water in such a manner is liable even if he is not guilty of negligence and such diversion of water causes legal injury. *Rau v. Wilden Acres Inc.,* 376 Pa. 493, 494-95, 103 A.2d 422, 423-24 (1954); *Westbury Realty Corp. v. Lancaster Shopping Center*

*Inc.,* 396 Pa. 383, 388, 152 A.2d 669, 672 (1959); *Chamberlin v. Ciaffoni,* 373 Pa. 430, 435, 96 A.2d 140, 143 (1953).

The court found by clear and convincing evidence that, although the developer defendants may have complied with minimal regulatory standards in their storm drainage plan, they have caused common-law storm water runoff injury to the plaintiffs in that the water runoff system at issue has unreasonably and unnecessarily altered and increased both the quantity and the velocity of storm water the plaintiffs sustain on their property during storm events.[1]

B. *CIDC-1 Claims the Trial Court Erred in Finding CIDC-1 Liable for Surface Water Damage Resulting From Floods So Extraordinary As To Constitute Vis Major*

This contention is also without merit. While it is true that a landowner is not responsible for rainfall so heavy that it is considered to be an act of God (now known as "vis major" or "force of nature") or great and extraordinary and out of the cause of nature. (See *Shamnoski v. PG Energy,* 579 Pa. 652, 858 A.2d 589 (2004).) CIDC-1

---

1. Nor can the developers hide behind permits like those issued by the Department of Environmental Protection which state "nothing in this permit shall be construed to preclude the institution of any legal action or relieve the permittee or co-permittee from any responsibilities, liabilities or penalties established pursuant to any applicable state law . . . see approval of coverage under the NPDES general permit for discharge of stormwater associated with construction activities (PAG 2—plaintiffs' motion for summary judgment, exhibit E page 8 of 12).

completely ignores the fact the plaintiffs presented evidence of other non-extraordinary rain events which impacted their property. In fact, plaintiffs' expert testified that the plaintiffs suffered flooding during insignificant storm events of as little as a quarter inch of rainfall. (See Tr. 123:20-124:24.)

Therefore, the court was correct in finding that CIDC-1 failed to meet its burden of proving the affirmative defense of vis major. See *Commonwealth ex rel. Corbett v. Griffin,* 596 Pa. 549, 563, 946 A.2d 668, 676-77 (2008).

C. *CIDC-1 Claims That the Trial Court Erred in Granting Plaintiffs' Request For a Mandatory Injunction To Implement a "Storm Water Solution"*

This contention is also without merit. There is authority for the court to issue a final decree directing the abatement of a damaging water flow on the property of plaintiffs including the implementation of a storm water management system that is available to manage the excess water flow. See *St. Andrew's Evangelical Lutheran Church v. Lower Providence Township,* 414 Pa. 40, 45, 198 A.2d 860, 862 (1964) and *Magee v. Marshman,* 20 D.&C.4th 184, 190-91 (Chester Cty. 1993).

As the plaintiffs proved at trial, and as the court found:

"The plaintiffs have established that their right to relief is clear, that an injunction is necessary to avoid further injury that cannot practically be compensated by damages and that the greater injury will result by refusing the injunction and allowing harmful flooding to continue to the advantage of further private development."

(Non-jury decision, p. 5.) See also, *Harding v. Stickman*, 823 A.2d 1110, 1111 (Pa. Commw. 2003).

### D. *CIDC-1 Claims That the Trial Court Erred in Ordering Defendants To Pay Plaintiffs' Legal Costs*

This contention is somewhat misplaced. What the court said was "the defendants will bear their own legal costs and those of the plaintiffs and the developer defendants shall exclusively bear the full costs of this court imposed 'storm water solution.'" (See non-jury decision p. 10.)

Such "costs" are authorized by 42 Pa.C.S. §1726 and the unrepealed portions of the Pennsylvania Storm Water Management Act, 32 P.S. §680.15(b) (see *Merlino v. Delaware County*, 556 Pa. 422, 728 A.2d 949 (1999) upholding the imposition of "expenses").

Our non-jury verdict in no way mentioned an award of attorneys' fees and otherwise speaks for itself.

### E. *CIDC-1 Claims That the Trial Court Erred in Entering a Non-Jury Verdict and Injunctive Relief Against CIDC-1 and "Its Principals, Shareholder, Agents, Employees, Heirs, Executors Administrators, Successors and Assigns"*

The above assertion of defendant CIDC-1 may be based on a misunderstanding of the court's wording. Obviously, the only named defendants in this case are the business entities Northeast Land Development LLC, CJS Dev. Inc., Tripp CDC Inc., CIDC-1 LLC as well as the City of Scranton. No individuals are named or are a party to this action.

What the court simply meant was injunctive relief was granted against the above-referenced business entity

developer defendants and from a practical standpoint any individuals who would purport to act on behalf of said developer business entity developer defendants.

This certainly does not violate the general rule that any action brought against the corporation or similar entities shall be prosecuted against the corporation in its corporate name. Pa.R.C.P. 2177; *Anderson Equipment v. Huchber,* 456 Pa. Super. 535, 540, 690 A.2d 1239, 1241 (1997).

Thus, the contention to defendant CIDC-1 that we are imposing a judgment against obviously un-named individuals is misplaced and without merit.

F. *Defendant CIDC-1 Contends That Plaintiffs' Claims Are Time-Barred*

This contention is without merit as the statute of limitations does not apply to a request for equitable relief. *United National Insurance Co. v. J.H. Finance Refractories Co.,* 542 Pa. 432, 437, 668 A.2d 120, 123 (1995).

G. *Defendant CIDC-1 Claims Again That Plaintiffs' Claims Are Barred by the Equitable Defense of Laches*

The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of a want of due diligence in failing to institute his action to another's prejudice. The question of laches is factual and to be determined by an examination of the circumstances. See *Patten v. Vose,* 404 Pa. Super. 426, 590 A.2d 1307 (1991).

In the case at hand, the court found that the plaintiffs diligently and in vain brought their flooding problems to numerous governmental bodies and officials as well as the developer in this case and clearly are not guilty of laches. (See non-jury decision pp. 3, 7.)

Therefore, the assertion of CIDC-1 based on laches is without merit.

H. *CIDC-1 Claims the Trial Court Should Enter Judgment for CIDC-1 and Against the City of Scranton Pursuant to Pa.R.C.P. 227(a)(2)*

CIDC-1 claims that judgment should be entered on its cross-claim against the City of Scranton per Pa.R.C.P. 227(a)(2) on the basis that by virtue of the city approving the subdivision plans, its execution of the development agreement[2] and its approval and acceptance of the infrastructure and improvements, the city has thus acquired sole ownership of the storm water drainage system for the Village of Tripp Park and has incorporated it into the city's storm water network. Thus, CIDC-1 argues the city should be solely liable, or jointly and severally liable to plaintiffs, or liable over to CIDC-1, with regard to plaintiffs' claim for increased water flow.

We agree that a purported acceptance of dedication can be expressed or implied. See *Tobin v. Radnor Township Board of Commissioners,* 142 Pa. Commw. 567, 580, 597 A.2d 1258, 1265 (1991); *Lillo v. Moore,* 704 A.2d 149 (Pa. Super. 1997).

---

2. The development agreement provides in pertinent part:

"All infrastructure shall be dedicated to the city upon final completion and acceptance of the city engineer." (See CIDC-1's exhibit no. 5, paragraph 1.)

However, it is the duty of a landowner to prove acceptance of a dedication by clear and convincing evidence. See *Lillo v. Moore, supra* and *Swierbenski v. Dunmore Borough Council,* 2006 WL 6031702 (court of common pleas trial court order per Judge Minora—2006).

In the case at hand, CIDC-1 contends that one sentence at the end of the May 8, 2001 development agreement between the City of Scranton and CIDC-1 constitutes an offer to dedicate the proposed infrastructure to the city (*i.e.,* "all infrastructure shall be dedicated to the city upon final completion and acceptance by the city engineer.").

We agree with the city that on its face, the above sentence is not a present offer of acceptance. The sentence speaks to a future event after the work has been completed and accepted by the city engineer.

It indeed contemplates a future act of dedication. We agree it cannot be construed as an offer of dedication as of the date of execution. Moreover, there is no other evidence of record that there was an offer of dedication of the storm water infrastructure by CIDC-1 to the city.

There is no evidence that the city engineer accepted the storm water infrastructure as built. Nor is there any evidence of a deed of dedication and its acceptance by the mayor and city council.

A contention that the release by the city of CIDC-1's letter of credit supports an implied acceptance is misplaced. The letter of credit introduced into evidence by the city lapsed on its one-year anniversary before the issues in this suit arose.

Lastly, the court correctly held that the storm water system as submitted and approved while meeting minimum regulatory standards caused a common-law excessive runoff injury to the plaintiff.

Since the city did not take ownership of the infrastructure from CIDC-1 through dedication, it cannot be liable as an owner.

Therefore, CIDC-1's attempt to enter judgment on its cross-claim against the City of Scranton is without merit.

I. *CIDC-1 Contends That a New Trial Is Warranted Because CIDC-1 Was Denied Its Due Process Rights When Certain Indispensable and Necessary Parties to the Lawsuit Including the SRA, Acker and Digg-It, Were Released and/or Dismissed From the Case Summarily and the Action Proceeded to Trial Prematurely Before the Pleadings Were Closed*

A party is indispensable where its rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights. *City of Philadelphia v. Commonwealth,* 575 Pa. 542, 566, 838 A.2d 566, 581 (2003); *Sprague v. Casey,* 520 Pa. 38, 48, 550 A.2d 184, 189 (1988).

We first note that the Scranton Redevelopment Authority (SRA) is no longer a party to this action per court order of discontinuance dated September 11, 2007 initiated by the plaintiffs.[3]

---

3. We agree with plaintiffs that even though they discontinued their claim against the SRA, there was nothing preventing CIDC-1 or any of the other defendants from filing a joinder complaint against and asserting their own claims against the SRA.

Moreover, CIDC-1 has not demonstrated any actual impairment of the rights of the SRA, Acker and Digg-It other than mere conjecture. Since CIDC-1 has not demonstrated any violation of due process rights of absent parties, such parties are not indispensable. See *Cry Inc. v. Mill Service Inc.,* 536 Pa. 462, 467-68, 640 A.2d 372, 375-76 (1994).

Any other claims or violations of due process by the court in dismissing Acker and Digg-It from the case are unfounded.

The defendants were on notice as early as September 12, 2007 that a non-jury trial was scheduled to commence in this 2003 case on April 28, 2008. Therefore, they had more than six months to assert claims or cross-claims against any parties they believed were jointly or severally liable for the claims that plaintiffs made against them.

As the court noted, if any one was being prejudiced at this point, it was the plaintiffs and we stated:

"This trial date was set a considerable period of time ago and they're joining people with two weeks before trial. It makes absolutely no sense to me unless your goal was to get this matter continued which I'm not going to do because every time it rains, these people are getting flooded. It's real simple." (Tr. 17:18-18:1)

Since the judge sitting in this 2003 non-jury trial has wide discretion to control the pace and scheduling of the proceedings in an effort to minimize prejudice and manifest justice, we certainly acted properly in rejecting further delay tactics disguised under an umbrella of "due process." See generally, *L.B. Foster Co. v. Charles Car-*

*acciolo Steel & Metal Yard Inc.,* 777 A.2d 1090 (Pa. Super. 2001).

Therefore, CIDC-1's motion for a new trial based on the above is denied.

### III. THE POST-TRIAL MOTIONS OF DEFENDANTS NORTHEAST LAND DEVELOPMENT LLC, CJS DEV. INC. AND TRIPP CDC INC. (THE NORTHEAST DEFENDANTS)

The post-trial motions of the Northeast defendants are essentially a mirror image of those filed by CIDC-1.

Specifically, the Northeast defendants took issue with:

"(a) the court's award of the costs of the storm water solution;

"(b) the court's alleged piercing of the corporate veil; and

"(c) the alleged failure of the court to keep the Scranton Redevelopment Authority and Acker Associates Inc. in the case as indispensable parties."

We have already addressed those issues in our analysis of the CIDC-1 post-trial motions and for the same reasons and with the same clarification we also deny the Northeast defendants' post-trial motions.

### IV. THE POST-TRIAL MOTIONS OF THE DEFENDANT, CITY OF SCRANTON

The city also objected to the imposition of costs for the storm water solution which we have previously ad-

dressed above. Likewise, the city's post-trial motion on that issue is also denied.

The city also seemed to raise again the issue of governmental immunity in its post-trial motion but did not brief same. Therefore it is waived. See *Moore v. Philadelphia, supra.* Even if it was briefed, we also held in our earlier rulings that the Political Subdivision Torts Claim Act, 42 Pa.C.S. §8541 et seq. extends only to liability for damages and not certain types of injunctive relief. *E-Z Parks Inc. v. Larson,* 91 Pa. Commw. 600, 609, 498 A.2d 1364, 1369-70 (1985); *Greco v. Hazleton City Authority,* 721 A.2d 399, 402 (Pa. Commw. 1998).

Therefore, the city's post-trial motions are denied in totality.

We will issue an appropriate final disposition.

## ORDER AND FINAL JUDGMENT ON THE NON-JURY VERDICT

And now to wit, June 26, 2009, upon due consideration of Defendants' motions for post-trial relief and in accordance with the foregoing memorandum, said post-trial motions are denied.

In addition, final judgment is entered in accordance with the non-jury verdict and decision of December 4, 2008 as explained by our above memorandum and as modified by the stipulation and order of May 22, 2009 which modified section IV, 1(e) of said December 4, 2008 non-jury decision.