IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| CKHS, Inc. and The Foundation for Delaware County | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | No. 1118 C.D. 2022 |
| | : | |
| Prospect Medical Holdings, Inc. and Prospect Crozer, LLC, and Commonwealth of Pennsylvania | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appeal of: Prospect Medical Holdings, Inc. and Prospect Crozer, LLC | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| CKHS, Inc. and The Foundation for Delaware County | : | |
| | : | |
| | : | |
| v. | : | No. 1265 C.D. 2022 |
| | : | |
| Prospect Medical Holdings, Inc. and Prospect Crozer, LLC and Commonwealth of Pennsylvania | : | |
| | : | |
| | : | |
| | : | |
| Appeal of: Prospect Medical Holdings, Inc. and Prospect Crozer, LLC | : | |
| | : | Argued: March 6, 2023 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                      FILED: May 3, 2023

In these consolidated appeals, Appellants Prospect Medical Holdings, Inc., and Prospect Crozer, LLC, (individually PMH and Prospect Crozer, and collectively Appellants), appeal two orders issued by the Court of Common Pleas of Delaware

County (Common Pleas) on, respectively, October 11, 2022, and November 2, 2022. Through these orders, Common Pleas granted Appellees CKHS, Inc., and The Foundation for Delaware County's (CKHS and Foundation, individually, and Appellees, collectively) First Amended Petition for Emergency Preliminary Injunctive Relief (Amended Petition), thereby preliminarily enjoining Appellants from turning a hospital they own into a behavioral health facility, and denied Appellants' subsequent request to dissolve or stay that preliminary injunction. After thorough review, we reverse Common Pleas' October 11, 2022 order and dismiss as moot Appellants' appeal of Common Pleas' November 2, 2022 order.

## I. Background

The central focus of this matter is Delaware County Memorial Hospital (County Hospital), an acute care facility located in Drexel Hill, Pennsylvania. On January 8, 2016, Crozer-Keystone Health System (as CKHS was known at that point) agreed to sell the vast majority of its holdings, including County Hospital and a multitude of other assets, to Appellants. *See* Reproduced Record (R.R.) at 719a-820a. This sale was memorialized through an asset purchase agreement (APA), which, of particular import to this case, contains a clause barring Appellants from closing any of the purchased hospitals prior to July 1, 2026, *i.e.*, 10 years after the APA's "Effective Date," without the express approval of both a local advisory board[1] and the Foundation. *See id.* at 753a-54a, 794a-96a.[2]

---

[1] This advisory board was also established through the APA. *See* R.R. at 794a-95a.

[2] Specifically, Section 11.16 of the APA provides:

> Future Sale or Closing. For a period of time of ten (10) years after the Effective Time, [Appellants] shall not sell or close any of the licensed Hospitals, including any campus of a licensed Hospital

**(Footnote continued on next page…)**

2

On September 21, 2022, Appellants announced that they would be converting County Hospital into a "behavioral health hospital" and contemporaneously notified both Delaware County Council and County Hospital's employees, in writing, that all of those employees would be fired in short order. *See id.* at 524a-25a, 589a-92a, 883a-91a. Despite taking these steps, and apparently having some manner of pre-announcement communication with Appellees' counsel, Appellants did not seek or secure the Foundation's assent before moving forward with its plans. *See id.* at 643a, 659a, 664a.

In response, Appellees filed a two-count breach of contract suit in Common Pleas on September 28, 2022, through which it sought a permanent injunction that would prevent Appellants from taking any steps to close County Hospital or cease offering acute care services at that location, as well as a Petition for Emergency Preliminary Injunctive Relief. *Id.* at 14a-230a. On October 3, 2022, Appellees filed their First Amended Complaint, which was substantially similar to the original

---

providing inpatient acute care services as of the Effective Time, acquired as part of the transactions contemplated hereby unless consented to by the Advisory Board and the Foundation in advance. Notwithstanding anything herein to the contrary, the prohibition of this Section 11.16 shall not apply to: (a) any sale or closure required by a Government Entity; (b) any merger, sale or other transaction that does not relate solely or principally to the Assets purchased pursuant to this Agreement; or (c) any corporate-level transactions involving [Appellants'] stock or securities, including macro-level mergers, recapitalizations or reorganizations or other changes of control of PMH or its parent. In the event of any transactions described in subsections (b) and (c) above, or any other change in control of [Appellants] after the Effective Time, any successor shall be required to comply with, and shall be bound by, the post-closing covenants and other obligations of Buyers as set forth in this Agreement.

R.R. at 796a (emphasis in original).

iteration, as well as the Amended Petition. Shortly thereafter, the Commonwealth of Pennsylvania, Office of the Attorney General (OAG), joined both the First Amended Complaint and Amended Petition in support of Appellees, and Appellants responded in opposition to the Amended Petition. *Id.* at 461a-91a.[3]

Common Pleas convened a hearing regarding the Amended Petition on October 7, 2022,[4] at which the parties presented several hours' worth of evidence and oral argument, and then took the matter under advisement at the hearing's close. *See id.* at 503a-717a. Thereafter, on October 11, 2022, Common Pleas issued an order that granted the Amended Petition in part. *Id.* at 916a-17a. In doing so, Common Pleas directed Appellants to "immediately suspend any actions materially altering the present operation of . . . County . . . Hospital, including but not limited to the acute care services and other services provided by . . . County . . . Hospital as a licensed hospital providing general hospital services to the public, pending further order of [Common Pleas.]" *Id.* Common Pleas also instructed Appellants to "maintain all services presently offered at . . . County . . . Hospital[, in addition to County Hospital's] present operations[,]" as well as to refrain from "directly or indirectly engag[ing] in any activity that would in any way materially and adversely affect such services or operations[.]" *Id.* at 917a. Finally, Common Pleas ruled that Appellees were not required to post a bond to secure the preliminary injunction,

---

[3] Appellants have also challenged the First Amended Complaint via preliminary objections. *See* R.R. at 1249a-85. However, those preliminary objections, and any rulings thereon, are not the subject of this appeal.

[4] On September 30, 2022, Common Pleas issued an order recusing all of its judges from handling Appellees' suit. R.R. at 460a. As a result, the Honorable Robert J. Shenkin, a senior judge from the Court of Common Pleas of Chester County, was appointed to preside over this matter as a visiting judge. *See id.* at 500a, 916a-17a; Appellants' Br at 5; Appellees' Br. at 12.

4

because Section 14.21 of the APA relieved them of the need to do so under the circumstances.[5] *Id.* Appellants appealed this order to our Court on October 12, 2022.

On October 14, 2022, Appellants filed a motion with Common Pleas, through which they requested that the preliminary injunction either be dissolved or stayed pending appeal. *Id.* at 964a-99a. Appellants then filed an amended version of this motion (Amended Motion to Dissolve) on October 21, 2022. *Id.* at 1009a-39a. Therein, Appellants argued that Common Pleas should lift the preliminary injunction because the Pennsylvania Department of Health (Department) was an indispensable party whose absence deprived Common Pleas of jurisdiction, as well as because severe staffing issues were preventing Appellants from providing services at County Hospital in compliance with Common Pleas' directive. *Id.* at 1010a, 1022a-27a.[6] In the alternative, Appellants asserted that a stay was warranted because they were likely to prevail on appeal. *Id.* at 1011a, 1027a-37a. Common Pleas then held a second hearing on October 28, 2022, after which it issued an order on November 2, 2022, that denied the Amended Motion to Dissolve. *Id.* at 1084a-1225a. Additionally, Common Pleas used that order to clarify that it had not enjoined Appellants "from proceeding with their plans precedent to the transition of [County Hospital] to a behavioral health facility," but had only barred them from actually effecting the transition. *Id.* at 1225a (some punctuation omitted).

---

[5] Section 14.21 of the APA states, in relevant part, that "the Parties [thereto] shall be entitled to an injunction or injunctions (*without the need to post bond or other security*) to prevent breaches of [the APA] and to enforce specifically the terms and provisions hereof in any court of competent jurisdiction, this being in addition to any other remedy to which they are entitled at law or in equity." R.R. at 810a (emphasis added).

[6] Appellants also argued that even if the Department had been named as a party, this Court, rather than Common Pleas, would have exclusive original jurisdiction over the matter. R.R. at 1010a, 1025a.

This order did not prevent several additional wrinkles from subsequently appearing and further complicating matters. On November 4, 2022, the Department ordered Appellants to suspend emergency services and imposed a ban on patient admissions at County Hospital, effective November 7, 2022, because patients' health and safety was being jeopardized by County Hospital's failure to provide adequate "diagnostic imaging services." *Id.* at 1240a-46a. Then, on November 7, 2022, Appellants appealed Common Pleas' November 2, 2022 order to our Court, which it supplemented on November 10, 2022, with applications to stay the preliminary injunction and expedite both briefing and oral argument before this Court.[7] Thereafter, on November 15, 2022, OAG filed a petition (Rule Petition) with Common Pleas, through which it alleged that Appellants were violating Common Pleas' injunction orders by failing to adequately staff County Hospital and requested that Common Pleas issue a rule directing Appellants to show cause as to why they should not be held in contempt. *Id.* at 1303a-38a.[8] In response, Common Pleas scheduled a rule hearing for December 15, 2022. This Court heard oral argument on December 7, 2022, regarding Appellants' stay application, and then granted it the following day, December 8, 2022, via a single-judge order. In doing so, this Court stayed Common Pleas' October 11, 2022 order "to the extent that [it required Appellants] to maintain all services and all present operations of [County] Hospital[.]" Commonwealth Ct. Or., 12/8/22, at 1. However, this Court also made clear that Appellants were nevertheless still obliged, by both the October 11, 2022 order and the Department's November 4, 2022 suspension directive, "to use good

---

[7] We granted Appellants' request to expedite this matter via *per curiam* order on November 16, 2022.

[8] Appellees also joined in this Rule Petition. R.R. at 1340a-41a.

6

faith reasonable efforts to staff [County] Hospital in order to lift the Department['s] suspension of emergency services and patient admissions." *Id.* at 1-2. In recognition of this stay, Common Pleas indefinitely postponed the rule hearing on December 9, 2022. R.R. at 1469a-70a. This state of affairs, in which Common Pleas' October 11, 2022 order is largely stayed, and the Department's suspension order and OAG's Rule Petition remain active, continues to the present day.

## II. Discussion

Appellants present a multitude of challenges to Common Pleas' aforementioned orders, which we summarize and reorder as follows. First, Common Pleas lacked jurisdiction to issue the preliminary injunction, because Appellees failed to join the Department, a party which Appellants argue is indispensable to this matter. Appellants' Br. at 27-32. Second, Common Pleas improperly found that a preliminary injunction was necessary to prevent irreparable harm, as the clause declaring a breach of the APA's provisions to *ipso facto* constitute irreparable harm is unenforceable, and because the record evidence was too speculative to support a finding of irreparable harm. *Id.* at 39-42. Third, Common Pleas incorrectly determined that Appellants' plan to turn County Hospital into a behavioral health hospital constituted a closure of that facility under the APA and, thus, erroneously concluded that Appellees were likely to succeed on the merits of their breach of contract claims. *Id.* at 32-39. Finally, Common Pleas abused its discretion by denying the Amended Motion to Dissolve, as the evidence presented at the October 28, 2022 hearing established that circumstances had changed and that the preliminary injunction was no longer warranted; according to Appellants, this is because it is now "virtually impossible" for Appellants to comply with the

7

preliminary injunction's terms and because the injunction is both injurious to the public interest and is causing more harm than good. *Id.* at 43-46.

We are unpersuaded by Appellants' first argument, regarding the Department's indispensability to this action. "The failure to join an indispensable party to a lawsuit deprives the court of subject matter jurisdiction. Whether a court lacks jurisdiction due to the failure to join an indispensable party may be raised at any time or *sua sponte.*" *HYK Constr. Co. v. Smithfield Twp.*, 8 A.3d 1009, 1015 (Pa. Cmwlth. 2010) (internal citations omitted).

> [The Supreme] Court has stated that a party is indispensable "when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." *Sprague v. Casey*, . . . 550 A.2d 184, 189 ([Pa.] 1988). "[T]he basic inquiry in determining whether a party is indispensable concerns whether justice can be done in the absence of" him or her. *CRY, Inc. v. Mill Serv., Inc.*, . . . 640 A.2d 372, 375 ([Pa.] 1994). In undertaking this inquiry, the nature of the claim and the relief sought must be considered. *See id.* at . . . 375-76.
>
> . . . .
>
> While this joinder provision is mandatory, it is subject to limiting principles. For example, where the interest involved is indirect or incidental, joinder may not be required

*City of Philadelphia v. Com.*, 838 A.2d 566, 581 (Pa. 2003). Furthermore, when considering whether a party is indispensable, a court must, at minimum, consider the following questions:

> 1. Do absent parties have a right or interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Mechanicsburg Area Sch. Dist. v. Kline*, 431 A.2d 953, 956 (Pa. 1981).

Appellants assert that each of these four questions must be answered in the affirmative here. Specifically, they argue that this is the case, because the Department is the governmental agency that has regulatory authority over hospitals in the Commonwealth, including County Hospital, as well as because the preliminary injunction issued by Common Pleas directly conflicts with the Department's suspension order. Appellants' Br. at 28-31. In addition, they rely heavily upon *CRY*, in support of their argument that the Department is an indispensable party to this matter. *See id.*

We, however, disagree with Appellants' preferred interpretation of the law and the facts. In *CRY*, the Supreme Court concluded that the Department of Environmental Resources (DER)[9] was an indispensable party. This was because the *CRY* plaintiffs sought relief pursuant to a multiplicity of environmental laws in a manner that, if granted, would have directly implicated DER's regulatory authority and have necessitated DER's close cooperation in order to put that relief into real-world effect. *See* 640 A.2d at 376. By contrast, Appellees' claims in this matter are all based upon its contract with Appellants, *i.e.*, the APA, to which the Department is not a party, and the relief Appellees either seek or have gained thus far neither directly implicates the Department's regulatory authority, nor relies in any way upon the Department's exercise of its enforcement powers.

---

[9] DER is now known as the Department of Environmental Protection.

Furthermore, while it is true that the Department has broad authority to regulate hospitals and other medical facilities under the Health Care Facilities Act[10] and its pendent administrative regulations,[11] there is no conflict in this instance between that authority and the preliminary injunctive relief granted to Appellees. The Department's suspension of County Hospital's ability to admit patients and provide emergency department services was in direct response to Appellants' failure to adequately staff County Hospital. *See* R.R. at 1241a. Were Appellants to correct this problem by doing the obvious, *i.e.*, hiring enough personnel to ensure that they maintain adequate staffing levels at County Hospital, they would eliminate the basis for the suspension order, which would enable them to get it lifted *and* would put them in compliance with Common Pleas' directives. In other words, any "conflict" between the Department's authority and Common Pleas' orders is, at this point, the illusory product of Appellants' actions.

Moreover, even if, facially speaking, the Department's regulatory authority and the relief sought (or obtained) by Appellees in this matter appeared to truly clash, the APA itself would resolve that conflict. Per Section 11.16 of the APA, which is the crux of Appellees' suit, the 10-year-long prohibition against Appellants closing or selling County Hospital "shall not apply to . . . any sale or closure required by a Government Entity[.]" *Id.* at 796a. "Government Entity" is defined in Section 4.9 of the APA as "any government or any agency, bureau, board, directorate, commission, court, department, official, political subdivision, tribunal or other instrumentality of any government, whether federal, state or local[.]" *Id.* at 761a. Given this, the Department is indisputably a government entity which could issue a closure or sale

---

[10] Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§ 448.101-448.904b.

[11] *See*, *e.g.*, 28 Pa. Code §§ 51.2, 51.41.

order regarding County Hospital that would be entirely unaffected by the restrictions imposed by Section 11.16. As such, any judicially dispensed relief in this matter would simply be inapplicable in the event that such relief would otherwise conflict with or countermand the Department's exercise of its authority.

Moving on, Appellants use their next two arguments to directly challenge Common Pleas' issuance of the preliminary injunction, specifically with regard to Common Pleas' determinations regarding the existence of irreparable harm and Appellees' likelihood of success on the merits of their claims.

> The six essential prerequisites that a moving party must demonstrate to obtain a preliminary injunction are as follows: (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare Pennsylvania v. Com.*, 104 A.3d 495, 501 (Pa. 2014). "For a preliminary injunction to issue, every one of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others." *Allegheny Cnty. v. Com.*, 544 A.2d 1305, 1307 (Pa. 1988).

> We keep in mind that an appellate court reviews an order granting or denying a preliminary injunction for an abuse of discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, . . . 828 A.2d 995, 1000 ([Pa.] 2003). Under this highly deferential standard of review, an appellate court does not inquire into the merits of the

11

controversy, but examines the record "to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* (quoting *Roberts* v. [*Bd.*] *of Dirs. of Sch. Dist.*, . . . 341 A.2d 475, 478 ([Pa.] 1975)).

*SEIU Healthcare*, 104 A.3d at 501. "Moreover, we will not 'pass upon the reasons for or against such action unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable[.]'" *Credit All. Corp. v. Philadelphia Minit-Man Car Wash Corp.*, 301 A.2d 816, 818 (Pa. 1973) (quoting *United Nat. Gas Co. v. Wagner*, 208 A.2d 843, 844 (Pa. 1965)).

With regard to the existence of irreparable harm, Section 14.21 of the APA provides as follows:

> The Parties[, *i.e.*, Appellants and Crozer-Keystone Health System,] hereto agree that irreparable damage would occur in the event that any provision of [the APA] is not performed in accordance with its specific terms or is otherwise breached. It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions (without the need to post bond or other security) to prevent breaches of [the APA] and to enforce specifically the terms and provisions hereof in any court of competent jurisdiction, this being in addition to any other remedy to which they are entitled at law or in equity. Without in any way limiting the remedies prescribed to the Parties under this <u>Section 14.21</u>, and for purposes of clarification, the Parties agree and acknowledge that, while not a Party to [the APA], the Foundation shall be entitled to an injunction or injunctions and any other such remedies to which the Parties are entitled at law or in equity, but only to prevent breaches of [the APA] and to enforce specifically the terms and provisions hereof.

R.R. at 810a (emphasis in original). We agree with Appellants that a clause of this nature, which declares irreparable harm to exist in the event contractual terms are breached, cannot alone support a conclusion that the first prong of the preliminary injunction standard has been satisfied. This issue appears to be one of first

12

impression under Pennsylvania law, as our research has revealed only a single prior case from our Commonwealth that even addressed such contractual clauses, which did so with what cannot even be called a cursory level of legal analysis. *See The York Grp., Inc. v. Yorktowne Caskets, Inc.*, 924 A.2d 1234, 1243 (Pa. Super. 2007).[12]

Therefore, we look to out-of-state decisions and those from the federal courts for persuasive guidance. *See Costa v. Ward*, 290 A.3d 335 n.24 (Pa. Cmwlth. 2022); *In re Est. of Rowley*, 84 A.3d 337, 341 n.8 (Pa. Cmwlth. 2013). In Delaware, our sister state's courts "have long held that 'contractual stipulations as to irreparable harm alone suffice to establish that element for the purpose of issuing . . . injunctive relief.'" *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*, 68 A.3d 1208, 1226 (Del. 2012) (quoting *Cirrus Holding Co. v. Cirrus Indus., Inc.*, 794 A.2d 1191, 1209 (Del. Ch. 2001)); *see True N. Commc'ns Inc. v. Publicis S.A.*, 711 A.2d 34, 44 (Del. Ch. 1997). That, however, constitutes the minority position, as the federal courts have consistently held that such clauses are, in effect, not worth the paper upon which they are written. *See*, *e.g.*, *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1130 (9th Cir. 2020) ("[T]he terms of a contract alone cannot require a court to grant equitable relief."); *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1263 (10th Cir. 2004) ("Courts finding irreparable harm from breaches of [contractual] provisions have not rested their determinations solely on the

---

[12] Appellants argue that another case, *Rollins Protective Services Company, A Division of Rollins v. Shaffer*, 557 A.2d 413 (Pa. Super. 1989), also involved contractual language of this nature and stands for the proposition that "Pennsylvania law does not permit parties to contract out of the legal requirement that an injunction requires a showing of irreparable harm." Appellants' Reply Br. at 15. However, *Rollins* did not involve a contractual provision like the one at issue here, which expressly declares irreparable harm to have occurred in the event the provision is breached; rather, *Rollins* addressed whether the breach of an employment contract's non-compete clause *automatically* constituted irreparable harm under Pennsylvania law, independent of the language used therein. 557 A.2d at 413-14. *Rollins* is thus of limited relevancy, at best, to this matter.

existence and subsequent breaches of [those] provisions."); *Smith, Bucklin & Assocs., Inc. v. Sonntag*, 83 F.3d 476, 481 (D.C. Cir. 1996) (a contractual clause stating that irreparable harm occurs in the event of a breach "by itself is an insufficient prop"); *Dice v. Clinicorp, Inc.*, 887 F. Supp. 803, 810 (W.D. Pa. 1995) ("A contractual provision simply cannot act as a substitute for a finding by [a court] that it would be appropriate to invoke its equitable powers. . . . Although [the] provision may constitute evidence in support of a finding of irreparable harm, [its] mere inclusion . . . cannot act as a substitute for the requisite showing of irreparable harm."); *Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990) ("[I]t is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate."); *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) ("[C]ontractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate.").

The majority position rests upon an appreciation of the high bar that must be surmounted in order for a party to secure an injunction.

> "[T]he grant of injunctive relief is an extraordinary remedy . . . which should be granted only in limited circumstances." *Frank's GMC Truck* [*Ctr.*]*, Inc. v.* [*Gen.*] *Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (citing *United States v. City of Philadelphia*, 644 F.2d 187, 191 n.1 (3d Cir. 1980)). As Justice Baldwin, sitting on the Circuit Court for the District of New Jersey wrote [193] years ago, "[t]here is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing (of) an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages."

14

> *Bonaparte v. Camden & A.R. Co.*, 3 F. Cas. 821 (C.C.D.N.J. 1830) (No. 1,617).
>
> . . . .
>
> It would represent an extraordinary variance from this basic principle for a court to recognize that the parties to a suit at equity have contracted around one of [the] fundamental elements [of an injunction].

*First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 235 (M.D. Pa. 2001).[13] We agree. Therefore, we adopt the majority position and hold that contractual provisions like Section 14.21 of the APA may, at most, constitute persuasive guidance regarding the existence of irreparable harm, but cannot ultimately strip a court of its discretionary authority to determine whether such harm will actually occur in the absence of a preliminary injunction.

This is more of an academic point in this instance, though, as Common Pleas did not predicate its finding of irreparable harm upon Section 14.21; rather, Common Pleas merely looked upon that provision as but one factor in its determination on that issue. As Common Pleas explained:

> [T]he parties contractually agreed that a breach of the APA would result in irreparable. *See* [Section] 14.21 of the APA The crux of [Appellees'] case is that [Appellants] will shut down the emergency room of [County Hospital] and will not continue to provide emergency and acute care to those persons desiring or requiring such care, particularly members of the immediate community in which the hospital is located. Although other similar services are available in the general vicinity, there can be no doubt that in some instances persons presenting at [County Hospital] with the need for acute and/or emergency services would be delayed in receiving these services if they were forced to go to another, more distant, facility. We find from this

---

[13] It also bears mentioning that "[b]ecause the nature of the alleged breach and its consequences are unknown when a contract is executed, a question exists as to whether the parties can effectively waive a judicial determination [as to irreparable harm]." *First Health*, 155 F. Supp. 2d at 234-35.

evidence that such persons would suffer immediate and irreparable harm from the failure to obtain needed services in a timely manner and that such failure cannot be adequately compensated by monetary damages, particularly, for example, to the widow or widower of a person who died from the delay in receiving emergency services.

Common Pleas Op., 12/2/22, at 5-6. Accordingly, Common Pleas did not abuse its discretion by relying in part upon Section 14.21 of the APA to support its finding of irreparable harm.

Even so, we agree with Appellants that Common Pleas abused its discretion by determining that Appellees had established they would suffer irreparable harm in the absence of a preliminary injunction. In order to support a finding of this nature, a petitioner must provide a court with "actual proof of irreparable harm." *Summit Towne*, 828 A.2d at 1002. In other words, a petitioner is tasked with offering "concrete evidence" in support of their claims, not mere "speculation and hypothesis." *Id.* Without such evidence, a petitioner can neither show that they will suffer irreparable harm, nor secure a preliminary injunction. *Id.* at 1002-03.

Here, Common Pleas determined that Appellants' plan to stop providing acute care services at County Hospital would endanger community members' ability to receive emergency medical treatment in a timely manner, irreparably harming their health and, indeed, their lives. Common Pleas Op., 12/2/22, at 5-6. While this concern may ultimately carry the day at a later juncture, based upon a more thoroughly developed record, it remains that the *existing* record is devoid of concrete evidence that would support Common Pleas' determination regarding the existence of irreparable harm.

In this instance, Melissa Lyon, Delaware County Health Department's (County Health Department) Public Health Director, was Appellees' sole witness

16

who testified regarding how deleterious it would be to the local community if Appellants ceased offering acute care services at County Hospital. The following exchanges encompass Lyon's testimony regarding that concern:

> [Appellees' Attorney:] Is access and availability to emergency room services one of the things the [County Health] Department is concerned about?
>
> [Lyon:] That is one aspect that we always take into consideration is how access and communities access services, correct.
>
> [Appellees' Attorney:] There's been a plan— [Appellants'] plan introduced into evidence. Have you seen that plan? It's a transformation plan [for County Hospital].
>
> [Lyon:] I have not seen that plan in detail. I am aware of that plan and had access to components of it by reviewing a website.
>
> [Appellees' Attorney:] If there is a closure of acute care services at [County Hospital], what would be the effect, if any, on public health?
>
> [Lyon:] In my public health experience over the last 22 years, whenever an access is removed from a community, it almost always, if not always, negatively impacts those health outcomes for the community. Accessing care, whether it's emergency or primary care, communities become very committed to a system that's near them or that they're familiar with. They build trust over years. You'll hear people say, oh, my child was delivered at that hospital and my other -- you know, my nephew's child or so on and so forth. They become very committed to those systems, and when they're removed, it becomes difficult for them to navigate and -- to different systems. They also -- if you can imagine if you're sick, it's always just hard to navigate a healthcare system when you're ill in general, so areas just begin to raise themselves over time once an access point is removed from a community.
>
> . . . .
>
> [Appellees' Attorney:] Ms. Lyon, do you know whether the closure of acute care services would affect a population

17

with Medicaid or socioeconomic disadvantaged or an elderly population? . . .

[Lyon:] The answer to that question would be that from my previous public health experience, those populations that are served typically would be impacted even more dramatically because of the barriers that are presented to them, meaning transportation barriers could be an issue, having other health systems accept certain insurance plans. Their ability to have free time in their schedules to access care in different locations could be challenging, so, historically, they will just suffer disproportionately.

. . . .

[Appellees' Attorney:] Ms. Lyon, are you aware as to whether [Appellants] will be closing [County Hospital's] emergency room?

[Lyon:] I have read that the emergency room will be closing.

[Appellees' Attorney:] Are you aware that [Appellants have] proposed [to replace the emergency room with] an EMS facility?

[Lyon:] I am not familiar with that level of detail.

[Appellees' Attorney:] If there were a hospital a few miles away and another hospital in Chester, [Pennsylvania,] would that have any effect from a public health perspective on the care of the immediate community?

. . . .

[Lyon:] The immediate community would likely have access to those facilities, and I fully believe that there's an opportunity for those individuals in the community to access that care. However, their likelihood of doing so could be varying across the population. For example, there's a level of trust in navigating. We all know that health systems . . . can be challenging, especially if your health literacy does not meet your expectations on even understanding what your health condition may be. It becomes challenging. It's not just like going to the next Walmart, right? So if you go to one Walmart, you go to another Walmart, all Walmarts basically look the same and are designed the same way. You go from one health

system to another health system, it's not necessarily that easy to navigate. So I believe that there would be challenges for those populations that then could impact their access to needing immediate care and potentially can exacerbate individual . . . health concerns or health afflictions or diagnoses that they may have, whether diabetes or asthma or cardiovascular. The list can go on. So it could result in a delay of care.

[Appellees' Attorney:] If it results in a delay, would there be any possibility of greater harm to the patient?

[Lyon:] Any[ ]time that the delay of care happens, it's always a risk of the individual to worsen and have those complications result in needing to have more emergency access -- emergency room access. It could also lead them to be incapacitated. It would really depend on the individual, but it almost always results in worsening care, not improved care.

. . . .

[Appellants' Attorney:] . . . Did you conduct any studies in advance of coming today of the impacts you're talking about, the hypothetical impacts you're talking about?

[Lyon:] No, I have not conducted any studies for Delaware County.

[Appellants' Attorney:] Did you collect any data from Appellants or Mercy Fitzgerald[, a nearby hospital that Appellants do not own,] in order to sort of play out any of the scenarios that you've been talking about to concretize them?

[Lyon:] No, I have not collected any data.

[Appellants' Attorney:] Do you have a set of written conclusions to provide the Court on any topic?

[Lyon:] I do not have any written conclusions.

[Appellants' Attorney:] You said that you do not have familiarity with the transition plan, correct? You knew of parts of it?

[Lyon:] That is correct.

. . . .

[Appellants' Attorney:] There are a number of other hospitals in Delaware County and the surrounding area beyond [those owned by Appellants], am I right?

[Lyon:] There are other hospitals in Delaware County, correct.

[Appellants' Attorney:] And did you model out what the impact would be if [Appellants] is able to, upon completing its renovation [of County Hospital], offer enhanced services for the population?

[Lyon:] So I appreciate the question about modeling out. It's not the work that I would be doing, but no, I did not. Thank you.

[Appellants' Attorney:] Okay. Did you conduct any analysis examining the future state of [County Hospital] or what it will provide?

[Lyon:] So, again, that would not necessarily be the work that would fall into a public health department to model out, but no, I did not.

[Appellants' Attorney:] So you don't have any testimony for the Court today one way or the other about the ultimate impact of the renovation [of County Hospital] by [Appellants] on the public health, right?

[Lyon:] That would be correct.

R.R. at 672a-81a.

This testimony is markedly devoid of the concrete evidence necessary to legally justify Common Pleas' irreparable harm determination. To the contrary, all of Lyon's statements, insofar as they relate to how the local community will be affected if acute care services are no longer offered at County Hospital, are couched in terms that are hypothetical, generalized, and speculative, rather than ones buttressed by specific data or information. Given this, Common Pleas lacked

20

apparently reasonable grounds to issue a preliminary injunction in Appellees' favor and, thus, abused its discretion by granting the Amended Petition.[14]

### III. Conclusion

In light of the foregoing, we reverse Common Pleas' October 11, 2022 order and dismiss Appellants' challenge to Common Pleas' November 2, 2022 order as moot.[15]

 

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[14] Appellees also argue that testimony offered by Anthony Esposito, Appellants' Chief Executive Officer, supports Common Pleas' finding of irreparable harm. *See* Appellees' Sur-reply Br. at 6. In this testimony, Esposito agreed with the characterization presented by Appellees' attorney that, generally speaking, Appellants' hospitals in the area are "necessary" for the community, in part because they take "pressure" off of "other health systems that are unable to effectively serve all patients[.]" R.R. at 576a. These comments, however, shed no light upon how the local community will be *specifically* affected if acute care services are no longer offered at County Hospital. As such, Esposito's testimony does not constitute evidence that is concrete enough to justify Common Pleas' irreparable harm determination.

[15] We need not address the remainder of Appellants' challenges to the preliminary injunction, because we have resolved Appellants' appeal of Common Pleas' October 11, 2022 order in their favor. *Allegheny Cnty.*, 544 A.2d at 1307.

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| CKHS, Inc. and The Foundation for Delaware County | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | No. 1118 C.D. 2022 |
| | : | |
| Prospect Medical Holdings, Inc. and Prospect Crozer, LLC, and Commonwealth of Pennsylvania | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appeal of: Prospect Medical Holdings, Inc. and Prospect Crozer, LLC | : | |
| | : | |
| | : | |
| | : | |
| CKHS, Inc. and The Foundation for Delaware County | : | |
| | : | |
| | : | |
| v. | : | No. 1265 C.D. 2022 |
| | : | |
| Prospect Medical Holdings, Inc. and Prospect Crozer, LLC and Commonwealth of Pennsylvania | : | |
| | : | |
| | : | |
| | : | |
| Appeal of:  Prospect Medical Holdings, Inc. and Prospect Crozer, LLC | : | |
| | : | |

# **O R D E R**

AND NOW, this 3rd day of May, 2023, it is hereby ORDERED:

1.  Appellants Prospect Medical Holdings, Inc. and Prospect Crozer, LLC's (Appellants) appeal, docketed at 1118 C.D. 2022, through which Appellants challenged the Court of Common Pleas of Delaware County's (Common Pleas) October 11, 2022 order that granted a preliminary injunction in favor of Appellees CKHS, Inc. and The Foundation for Delaware County, is GRANTED;

2.      Common Pleas' October 11, 2022 order is REVERSED;

3.      Appellants' appeal, docketed at 1265 C.D. 2022, through which Appellants challenged Common Pleas' November 2, 2022 order that denied Appellants' amended motion to dissolve or stay the preliminary injunction, is DISMISSED AS MOOT.


                                    _____
                                    ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CKHS, Inc. and The Foundation
for Delaware County

        v.

Prospect Medical Holdings, Inc.
and Prospect Crozer, LLC,
and Commonwealth of
Pennsylvania

Appeal of: Prospect Medical
Holdings, Inc. and
Prospect Crozer, LLC

CKHS, Inc. and The Foundation for
Delaware County

        v.

Prospect Medical Holdings, Inc. and
Prospect Crozer, LLC and
Commonwealth of Pennsylvania

Appeal of: Prospect Medical
Holdings, Inc. and Prospect Crozer,
LLC

:   CASES CONSOLIDATED
:
:
:
:
:   No. 1118 C.D. 2022
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:   No. 1265 C.D. 2022
:
:
:
:
:
:
:
:
:
:   Argued: March 6, 2023

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE LORI A. DUMAS, Judge

## ***OPINION NOT REPORTED***

CONCURRING AND DISSENTING OPINION
BY JUDGE McCULLOUGH

                                   FILED: May 3, 2023

I concur with the Majority's conclusions that the Pennsylvania Department of Health is not an indispensable party and that Section 14.21 of the controlling Asset Purchase Agreement (APA) does not, by itself, establish irreparable harm. I cannot, however, agree with the Majority's conclusion that CKHS, Inc. and The Foundation for Delaware County (collectively, Appellees) failed to present sufficient evidence of irreparable harm to support the reasonableness of the Court of Common Pleas of Delaware County's (trial court) preliminary injunction. In this latter respect, and to the degree that the Majority applies a standard of review more exacting than our precedents permit, I respectfully dissent.

Our review of a trial court's grant of a preliminary injunction is highly deferential. *Township of Middle Smithfield v. Kessler*, 882 A.2d 17, 21 (Pa. Cmwlth. 2005). The Pennsylvania Supreme Court has explained the applicable standard of review as follows:

> [O]n an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court.

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003) (quoting *Roberts v. Board of Directors of the School District of the City of Scranton*, 341 A.2d 475, 478 (Pa. 1975)). Further,

> a preliminary injunction is designed to preserve the subject of the controversy in the condition in which it is when the order is made, it is not to subvert, but to maintain the existing status quo until the legality of the challenged

conduct can be determined on the merits. There is, however, a distinction between mandatory and prohibitory injunctions. Mandatory injunctions command the performance of some positive act to preserve the status quo, and prohibitory injunctions enjoin a party from doing an act that will change it. As here, where the injunction at issue is merely prohibitory, we do not review the merits of the controversy but only determine if there are any reasonable grounds to support the trial court's action. If no such grounds exist, only then will we reverse.

*Greater Nanticoke Area Educational Association v. Greater Nanticoke Area School District*, 938 A.2d 1177, 1183 (Pa. Cmwlth. 2007) (internal citations and quotations omitted).

The Majority concludes that Appellees' irreparable harm evidence, which consisted chiefly of the testimony of Melissa Lyon, the Public Health Director of the Delaware County Health Department, was "hypothetical, generalized, and speculative," and therefore was not "concrete," "actual proof" of irreparable harm. *Appeal of: Prospect Medical Holdings, Inc. and Prospect Crozer, LLC* (Pa. Cmwlth., Nos. 1118 and 1265 C.D. 2022, filed May 3, 2023), slip op. at 16, 20 (MO). I cannot agree with that characterization. Although Prospect Medical Holdings, Inc. and Prospect Crozer, LLC (Prospect) will continue certain acute care service lines at Delaware County Memorial Hospital (County Hospital), the emergency room will be shuttered and the remaining service lines will not together constitute an acute care facility. (Reproduced Record (R.R.) 516a, 518a, 663a.) Although individuals could seek emergent care elsewhere in this health system, the trial court reasonably could have concluded that, at the very least, patients will not have access to the same services at the same locations and will have to re-orient to new, unfamiliar facilities.

Ms. Lyon, who has 22 years of public health experience, said at least this much, and her testimony was not so hypothetical or generalized that it could not reasonably have supported the trial court's limited injunction maintaining County Hospital's status quo.[1] Ms. Lyon testified to her department's involvement in conducting community and population healthcare needs assessments, which include the assessment of emergent care needs. (R.R. 672a.) She testified that changes like those proposed by Prospect always, or almost always, negatively impact health outcomes in a community because patients must adjust away from familiar, regularly-used facilities to others that are less familiar and less able to provide logistical services for elderly or socioeconomically disadvantaged patients. (R.R. 673a-74a, 676a.) Further, the lack of familiarity and need for adjustment to another facility or system could result in a delay of care. (R.R. 677a.)

The Majority is correct that Ms. Lyon did not testify to "specific data" showing the impact that the discontinuance of acute care services, emergent care particularly, would have on the community around County Hospital. (MO at 20.) In this context, however, the Majority requires too much. Although data specific to this community and health system might be helpful and even necessary to obtaining a permanent injunction, the very purpose of preliminary injunctive relief permits harm evidence that is less precise. Indeed, irreparable and irreversible harm is, by its nature, speculative. *See Anchel v. Shea*, 762 A.2d 346, 351 (Pa. Super. 2000) ("An injury is regarded as 'irreparable' if it will cause damage which can be

---

[1] Read together, the trial court's orders of October 11, 2022, and November 2, 2022, imposed a limited status quo injunction precluding County Hospital from materially altering its then-present operations, including acute care services. The trial court made clear that the injunction did not prevent Prospect from continuing logistical preparations for the transition to a behavioral health facility; it merely could not implement and consummate the transition, if at all, until after a decision on the merits in this case. (R.R. 916a, 1225a.)

estimated only by conjecture and not by an accurate pecuniary standard.") (citation and quotations omitted).[2]

Thus, I would conclude that Appellees presented sufficient evidence of irreparable harm to support the issuance of a preliminary injunction temporarily enjoining Prospect from consummating the transition of County Hospital into a behavioral health facility. I accordingly would proceed to consider the other relevant preliminary injunction factors to determine whether the trial court had "any reasonable grounds" to maintain County Hospital's status quo pending final decision on Appellees' claims. To the extent that the Majority prematurely stopped short of conducting that analysis, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

---

[2] Although not binding, opinions of our sister appellate court are valid persuasive authority for our analysis. *See In re Superior-Pacific Fund, Inc.*, 693 A.2d 248, 253 (Pa. Cmwlth. 1997) (recognizing that, although "decisions of our sister Superior Court are not binding upon this Court, we always give great deference to their persuasive wisdom and logic").